```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                          :
                                                                :    Chapter 11
OLD CARCO LLC, f/k/a,                                           :
CHRYSLER LLC, et al.,                                           :    Case No. 09-50002 (SMB)
                        Debtors.                                :
----------------------------------------------------------------X
JAMES RICKS and                                                 :
FELICIA RICKS,                                                  :
                                                                :
                        Plaintiffs,                             :
                                                                :
        —against—                                               :    Adv. Proc. No. 12-09801 (SMB)
                                                                :
NEW CHRYSLER GROUP LLC, et al.,                                 :
                                                                :
                        Defendant.                              :
----------------------------------------------------------------X
```

**MEMORANDUM DECISION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S:**

JAMES AND FELICIA RICKS
Plaintiffs *pro se*
P.O. Box 1472
Maple Grove, MN 55311

THE ROSE LAW FIRM, PLLC
*Attorneys for New Chrysler Group LLC*, et al.
501 New Karner Road
Albany, New York 12205
        Keith B. Rose, Esq.
        Mark W. Skanes, Esq.
                Of Counsel

**STUART M. BERNSTEIN
United States Bankruptcy Judge:**

      Felicia Ricks ("Felicia") purchased a Dodge Durango (the "Vehicle") from Rosedale

Dodge in Minnesota on May 16, 2005. (*Letter to Docket Office,* dated June 20, 2012 ("*Ricks*

*Letter*"), Ex. 3 ("*Retail Installment Contract*") (ECF Doc. # 16).)[1] After experiencing mechanical problems and believing they were defrauded, Felicia and her husband James Ricks ("James," and together with Felicia, the "Ricks") commenced this adversary proceeding against Chrysler Group LLC ("New Chrysler"), and subsequently filed an *Amended Complaint*, dated Apr. 21, 2012 (ECF Doc. # 18).[2] New Chrysler moved to dismiss the *Amended Complaint*, and the Court converted that motion to one for summary judgment. The Ricks also cross-moved for summary judgment. For the reasons that follow New Chrysler's motion is granted and the Ricks' motion is denied.

## BACKGROUND[3]

On February 22, 2004, Chrysler LLC, n/k/a Old Carco completed assembly of the Vehicle, (*Affidavit of Alan E. Stasiak*, sworn to Oct. 17, 2012 ("*Stasiak Affidavit*"), Ex. A (ECF Doc. # 22)), and sold it to Hudson Chrysler the next day. (*Affidavit of Timothy Jubie*, sworn to Sept. 28, 2012 ("*Jubie Affidavit*"), Ex. A (ECF Doc. # 23).) Hudson Chrysler performed a pre-delivery inspection, and sold the Vehicle to Roseville Dodge on May 11, 2004. (*See id.*, Ex. C &

---

[1]   "ECF Doc." refers to the electronic docket in this adversary proceeding. "ECF/Main Case Doc." refers to the electronic docket in the main bankruptcy case.

[2]   The summons and complaint identified the defendants as "New Chrysler Group LLC, *et al.*" but did not name the other defendants. The *Amended Complaint* named "New Chrysler Group LLC, *et al.*" and "Chrysler Group LLC, *et al.*" as defendants without further identification. "New Chrysler Group, LLC" is a misnomer; the purchaser of the Debtors' assets was "Chrysler Group LLC." To the extent that the Ricks intended the latter to refer to the Debtors, the Ricks were required to assert their claims through the claims allowance process rather than by adversary proceeding. Accordingly, the Court will treat the complaint and the *Amended Complaint* as being directed only at New Chrysler.

[3]   The Ricks have appeared *pro se*. The Court conducted several telephonic hearings and gave them the opportunity to explain their claims. In addition, the Ricks have supplemented their initial pleadings several times.

2

D.) Felicia purchased the Vehicle from Rosedale Dodge one year later on May 16, 2005.[4] According to the *Retail Installment Contract*, the Vehicle was new at the time of her purchase.

The Vehicle came with limited warranties. (*Stasiak Affidavit* at ¶ 6.) The "Basic Limited Warranty" covered parts and labor needed to correct any defective material, workmanship or factory preparation. (*Id.*, Ex. D at 5-6 (2004 Warranty Information).) With certain exceptions that are not germane, it ran for thirty-six months from delivery or 36,000 miles, whichever occurred first. The Vehicle also came with an extended "Powertrain Warranty" that kicked in once the Basic Limited Warranty expired, and lasted until the earlier of seven years from the date the vehicle was put in service or 70,000 miles. (*Id.*, Ex. D at 8.) The Basic Limited Warranty and Powertrain Warranty are sometimes referred to collectively as the "Factory Warranty."

The records submitted with the motions indicate that approximately three years after Felicia purchased the Vehicle, she began to experience mechanical problems with the car primarily relating to the instrument panel. On or about May 3, 2008, Roseville Chrysler Jeep, Inc. performed repair work on the instrument panel, (*see id.*, Ex. B (Warranty Claim Report), at 3), and two days later, an Alabama dealer did too. (*See id.*, Ex. D (Warranty Claim Report), at 4). According to the Ricks, this repair work did not fix the problem, and May 2008 was the last approximate time they were able to drive the Vehicle for personal use, other than bringing it in for further repairs. (*Transcript of Hearing Held on May 31, 2012*, at 7 (ECF Doc. # 15).)

By January 15, 2009, the Vehicle had 72,439 miles and the Factory Warranty had expired. (*Stasiak Affidavit* at ¶¶ 9-10.) Felicia continued to experience problems primarily with the instrument panel. On numerous occasions thereafter, she brought the Vehicle into various

---

[4] The record does not reflect when Rosedale Dodge acquired the Vehicle from Roseville Dodge.

3

dealers who continued to deal with the instrument panel as well as other problems. (*See id.*, Ex. B (Warranty Claim Reports), at 5-16.)

At some point, the Ricks complained to the Minnesota Office of the Attorney General. In a letter dated June 24, 2009, Diana Moreland, a Warranty and Customer Relations Manager with Old Carco wrote to Anthony Bohn of the Consumer Services Division of the Minnesota Attorney General's Office in response to his inquiry. (*Ricks Letter*, Ex. 5 ("*Moreland Letter*").) A copy was sent to the Ricks. Moreland advised Bohn that the Ricks were *not* the original owners of the Vehicle. She also stated that the warranties had expired, Old Carco had nevertheless performed an "Out of Warranty Goodwill Repair," but Old Carco would deny any additional goodwill repairs on the Vehicle.

In July 2009, the Ricks were told that the Vehicle's problem could not be fixed, (*Amended Complaint* at 1), and in February 2010 or 2011, they were told that no Chrysler dealership would continue to service the Vehicle. (*Transcript of Hearing Held on July 17, 2012*, at 17 (ECF Doc. # 19).)

**The Bankruptcy**

On April 30, 2009, Old Carco and twenty-four of its affiliates (collectively, the "Debtors") filed chapter 11 petitions in this Court. In a well-publicized transaction, the Debtors entered into a Master Transaction Agreement ("MTA") agreeing to sell substantially all of their assets free and clear of all claims and liabilities (other than "Assumed Liabilities"), whenever arising, to New Carco Acquisition LLC, later renamed Chrysler Group LLC (referred herein as New Chrysler). *See Shatzki v. Abrams*, No. 1:09cv02046 LJO DLB, 2010 WL 148183, at *1 (E.D. Cal. Jan. 12, 2010); *Cooper v. Daimler AG*, No. 1:-09-CV-2507-RWS, 2009 WL 4730306,

4

at *1 (N.D. Ga. Dec. 3, 2009). The transaction closed on June 10, 2009 (the "Closing Date"), the Debtors ceased operations and New Chrysler took over the operations of the "Chrysler" automotive business.

The Assumed Liabilities relating to vehicles manufactured and sold before the Closing Date were few. Pursuant to MTA § 2.08, New Chrysler assumed and agreed to timely perform "the Assumed Liabilities and no others," including "all Liabilities pursuant to product warranties, product returns and rebates on vehicles sold by Sellers prior to the Closing." MTA § 2.08(g).[5] "Amendment No. 4" subsequently amended MTA § 2.08(h) to expand the Assumed Liabilities to include certain product liability claims arising from "accidents":

> (h) . . . (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

(Amendment No. 4, at ¶ 1.)[6]

Finally, ¶ 19 of the *Sale Order*[7] approving the MTA added certain Lemon Law claims to the list of Assumed Liabilities but limited the assumed liability to vehicles *manufactured* within five years of the Closing Date:

---

[5]  A copy of the MTA is annexed as Exhibit A to the *Notice of (A) Successful Bidder for Substantially All of the Debtors' Assets and (B) Filing of Amended Purchaser Agreement*, dated May 31, 2009. (ECF/Main Case Doc. # 3071).)

[6]  A copy of Amendment No. 4 is annexed as Exhibit A to the (*Stipulation and Agreed Order Approving Amendment No. 4 to Master Transaction Agreement*, dated Nov. 19, 2009 (ECF/Main Case Doc. # 5988).)

[7]  See Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief, dated June 1, 2009 (ECF/Main Case Doc. # 3232).)

5

>   19. . . . [T]he Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved prepetition or in the future, on vehicles manufactured by the Debtors in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws) . . . As used herein, "Lemon Law" means a federal or state statute, including, but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute.

All other liabilities were excluded. "Excluded Liabilities" included "all Product Liability Claims arising from the sale of Products or Inventory on or prior to the Closing that are not described in Section 2.08(h)." (MTA § 2.09(i); *Amendment No. 4*, at ¶ 2.) "Product Liability Claim" meant

>   [a]ny Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, *or any other warranty claims*, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns *and/or any similar claims* . . . .

(MTA (Definitions Addendum) at 90, as modified by Amendment No. 1 to Master Transaction Agreement, at ¶ 36, a copy of which is annexed to the MTA (emphasis added).)

The net effect of these provisions, particularly those affecting warranty claims, was explained by Bankruptcy Judge Arthur Gonzalez, the judge who oversaw the sale and signed the *Sale Order*, in subsequent decisions. For example, in *Tulacro v. Chrysler Group LLC (In re Old Carco LLC)*, Adv. No. 11-09401 (AJG), at 6-7, slip. op. (Bankr. S.D.N.Y. Oct. 28, 2011) (ECF/Adv. Proc. No. 11-09401 Doc. # 18.) [8] the purchaser of a 2003 Dodge vehicle sued New

---

[8] A copy of *Tulacro* is annexed as Exhibit C to *Chrysler Group LLC's Memorandum of Law in Support of Its Motion to Dismiss*, dated Oct. 18, 2012 ("*New Chrysler Memo*") (ECF Doc. # 24.)

6

Chrysler alleging that it had failed to repair the vehicle. In addition to claims under California's Lemon Law, the plaintiff asserted general breach of warranty claims.

Judge Gonzalez parsed the language of the MTA, the amendments to the MTA and the *Sale Order*, and explained the context of the negotiations in which they arose. He ruled that the only warranty-related obligations that New Chrysler assumed under MTA § 2.08(g) were the limited written warranties issued in connection with the vehicle pursuant to which the Debtors were obligated to "'cover the cost of all parts and labor needed to repair any defective item on [a] truck supplied by [the Debtors] that is defective in material, workmanship or factory preparation.'" *Tulacro*, at 6. These obligations corresponded to the Factory Warranty, and were limited to the costs of parts and labor associated with the repair. New Chrysler did not assume any other warranty-related obligations except for (1) certain Lemon Law claims (under *Sale Order* ¶ 19) and (2) Product Liability Claims arising from accidents (under MTA § 2.08(h), as amended (see Amendment No. 4, at ¶ 1)). *Tulacro*, at 6-7.

Judge Gonzalez reiterated his interpretation in his bench ruling granting New Chrysler's motion to dismiss the complaint in *Tatum v. Chrysler Group LLC (In re Old Carco LLC)*, ECF/Adv. Proc. No. 11-09411 Doc. # 73 (Bankr. S.D.N.Y. Feb. 15, 2012).[9] He explained that as originally drafted, the MTA excluded all claims relating to vehicles sold prior to the closing date. Certain amendments carved out narrow exceptions. New Chrysler assumed written warranties, limited to the costs of parts and labor, and did not assume any other warranty-related claims. If the repair was not effective, no further liability was assumed. Otherwise, MTA § 2.09(i), as amended (see Amendment No. 4, at ¶ 2), barred all warranty claims.

---

[9] A copy of *Tatum* is annexed as Exhibit D to the *New Chrysler Memo*.

## DISCUSSION

New Chrysler moved to dismiss the Ricks' *Amended Complaint* for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and submitted materials outside the pleadings. Rule 12(d) of the Federal Rules of Civil Procedure provides:

> If, on Motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

After reviewing these materials, and concluding that the dispute presented a pure question of law involving the interpretation of the MTA, as amended, and the *Sale Order*, the Court converted New Chrysler's motion to one for summary judgment and granted the parties the opportunity to submit additional materials in support of or in opposition to the converted motion. (*Order*, dated Nov. 16, 2012 (ECF Doc. # 28).) The Ricks made two additional submissions, (*see Affidavit of Plaintiff's James Ricks and Felicia Ricks in Opposition of [sic] Defendant Group LLC's Motion for Summary Judgment*, dated Dec. 4, 2012 (ECF Doc. # 29); *Statement RE: Additional Certain Documents*, filed on Dec. 10, 2012 (ECF Doc. # 32)), and New Chrysler's summary judgment is ripe for determination.

The Ricks' claims fall into three categories: (1) a claim under Minnesota's Lemon Law, (2) a more general breach of warranty claim, and (3) a claim sounding in fraud. Before addressing these claims, the Court must first consider the claims asserted by James. All of the claims arise from the purchase of the Vehicle. According to the *Retail Installment Contract*, Felicia was the purchaser. All of the claims asserted by James belong solely to Felicia, and the *Amended Complaint* is dismissed as to James on this ground as well as the others that follow.

A.  **Lemon Law Claim**

Minnesota's Lemon Law, MINN. STAT. § 325F.665 (2011), provides a remedy to the purchaser of a new motor vehicle suffering from a chronic defect that cannot be fixed. If the purchaser meets the requirements of the Lemon Law, the manufacturer must replace the vehicle or refund the purchase price, as adjusted in amount under the statute. If the manufacturer offers a replacement vehicle, the purchaser has the option of insisting on a refund instead.

New Chrysler has demonstrated the undisputed fact that the Vehicle was manufactured no later than February 22, 2004. According to the documents submitted with its motion, it was "built" on that date, (*Stasiak Affidavit*, Ex. A), and sold to Hudson Chrysler LLC the next day, (*Jubie Affidavit*, Ex. B). It was then sold to Roseville Dodge; and was purchased by Felicia from Rosedale Dodge about one year later.

The terms of the *Sale Order* bar Felicia's Lemon Law claim because the Vehicle was manufactured more than five years before the Closing Date. Felicia has not come forward with any evidence showing that the Vehicle was manufactured within the five year period, and although she bought the Vehicle within the five year period, *Sale Order* ¶ 19 unambiguously requires us to look to the manufacture date, not the purchase date. Accordingly, the Lemon Law claim is dismissed.

B.  **Breach of Warranty**

Assuming that the mechanical problems constituted a breach of warranty, the claims are also barred. As noted, New Chrysler assumed the Factory Warranty limited to the costs of labor and parts. The Basic Limited Warranty expired on the earlier of 36,000 miles or three years from delivery to the purchaser. The Powertrain Warranty lasted for 70,000 miles or seven years,

9

whichever occurred sooner. While it is not clear that the Vehicle's mechanical problems primarily affecting the instrument panel came under the Powertrain Warranty, the Factory Warranty, which includes the Powertrain Warranty, expired no later than January 2009 by which time the Vehicle had been driven more than 72,000 miles. New Chrysler did not assume any other warranties (except as noted in *Sale Order* ¶ 19), and Felicia's claim for breach of warranty is, therefore, dismissed.

**C.    Fraud**

Felicia asserts two claims sounding in fraud. First, as suggested by the *Moreland Letter*, Rosedale Dodge sold her a used vehicle which it represented in the *Retail Installment Contract* to be new. Second, Felicia implies that her seller turned back the odometer prior to the sale. (*See James and Felicias Ricks Memorandum of Law in Support of Motion for Summary Judgment*, filed Nov. 8, 2012, at 3-4 (ECF Doc. # 26).) New Chrysler did not assume any liabilities based on fraud or fraudulent practices, (*see Tatum*, ECF/Adv. Proc. No. 11-09411 Doc. # 73), and accordingly, the fraud claims are dismissed.

Based on the foregoing, New Chrysler's motion for summary judgment is granted, and the Ricks' motion for summary judgment is denied. The Court has considered the Ricks' remaining arguments, and concludes that they do not entitle them to relief against New Chrysler. The defendant is directed to submit a proposed order consistent with this opinion.

Dated:  New York, New York
        May 2, 2013

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge

10